UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

Brianne S.,[1]

                                               Plaintiff,                Case # 19-cv-1718-FPG

v.                                                                         DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                             Defendant.
───────────────────────────────────────

## INTRODUCTION

On May 3, 2017, Plaintiff Brianne S. protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), and on June 26, 2017, Plaintiff protectively applied for Supplemental Security Income under Title XVI of the Act. Tr.[2] 60, 164. The Social Security Administration (the "SSA") denied her claim, and Plaintiff appeared at a hearing before Administrative Law Judge Ronald J. Thomas (the "ALJ") on December 12, 2018. Tr. 33-59. At the hearing, Plaintiff and vocational expert Warren Maxim (the "VE") testified. On January 23, 2019, the ALJ issued an unfavorable decision. Tr. 12-32. The Appeals Council denied review, making the ALJ's decision the final decision of the SSA. Tr. 1-3. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 11. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 6.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

**LEGAL STANDARD**

I.   **District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

II.  **Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, the claimant's residual functional capacity ("RFC"); (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work that exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2015, the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: (1) narcolepsy; (2) obesity; (3) degenerative disc disease; (4) polycystic kidney disease; (5) gastroparesis; (6) bipolar disorder; and (7) social anxiety disorder. Tr. 18. At step three, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. Tr. 18. The ALJ determined that Plaintiff maintained the RFC to perform light work.[4] However, the ALJ found that Plaintiff had certain additional limitations including that Plaintiff can perform occasional twisting, squatting, climbing, kneeling, crawling, bending, balancing, but no climbing of ropes, ladders, or scaffolds. Tr.19. The ALJ also found that Plaintiff should avoid hazards such as heights, vibration, dangerous machinery and driving. Tr. 19. Finally, the ALJ found that Plaintiff is capable of simple, routine, repetitious work that does not require teamwork or working closely with the public and occasional interaction with the public, coworkers, and supervisors. Tr. 19.

In formulating the RFC, the ALJ found the assessment of the State agency physician "not persuasive" because the opinion "was based on information contained in the record at the time that the assessment was made, and no medical records generated or provided after that date were considered by this doctor." Tr. 25. The ALJ found the opinion of the consultative examiner,

---

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

3

Tammy Connell, MA, to be "generally persuasive" because "it is supported by intact mental status examinations." Tr. 24-25. The ALJ found "not persuasive" the medical source statement of Dr. Jeffrey McGovern, M.D., because "the [Plaintiff] has varied daily activities and she is able to take care of her child," and because "treatment notes show intact mental and physical examinations." Tr. 25. Finally, the ALJ found the treating source statement of Dr. Warren Beaver, M.D., to be "minimally persuasive" because "treatment notes show[ ] generally intact physical and mental examinations that do not support [the] limitations." Tr. 25.

At steps four and five, the ALJ concluded that there were jobs that existed in the economy that Plaintiff could perform including, for example, laundry folder, photocopy machine operator, and inserter. Tr. 27. As such, the ALJ found that Plaintiff was not disabled. Tr. 28.

**II.     Legal Standard**

"When determining a claimant's RFC, an ALJ must evaluate every medical opinion received, '[r]egardless of its source.'" *Anna T. v. Commissioner*, No. 19-CV-1524-LJV, 2021 WL 810014, at *2 (W.D.N.Y. March 3, 2021) (citing 20 C.F.R. § 404.1527(c)). "[B]efore an ALJ may deny a claimant's application, the ALJ must confront the evidence in the claimant's favor and explain why it is was rejected." *Anna T.*, 2021 WL 810014 at *2 (citation, internal quotation marks, and alterations omitted).

"The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded." *Raymond M. v. Commissioner*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *4 (N.D.N.Y. Feb. 22, 2021). "According to the new regulations, the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Raymond M.*, 2021 WL 706645, at *4 (citing *Revisions*

4

*to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules")*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "Instead, the Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and 'other factors.'" *Raymond M.* 2021 WL 706645, at *4 (citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)).

Under the new regulations, "the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions.'" *Id.* (citing 20 C.F.R. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1)). However, the new regulations "eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion." *Id.* Of the five factors the ALJ is to consider in evaluating the persuasiveness of medical opinions, consistency and supportability are "the most important." *Raymond M.* 2021 WL 706645, at *4 (citing *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853).

**III.    Analysis**

Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC because he failed to properly weigh the opinions of treating physician, Warren Beaver, M.D., and treating pulmonary critical care specialist, Jeffrey McGovern, M.D. ECF No. 9 at 3. The Court agrees that remand is required.

Here, the amended regulations apply because Plaintiff's application for benefits was filed after March 27, 2017. As discussed above, the ALJ considered multiple medical opinions regarding Plaintiff's physical and mental limitations. Plaintiff specifically challenges the ALJ's evaluation of the opinions of treating physician, Warren Beaver, M.D., and treating pulmonary

5

critical care specialist, Jeffrey McGovern, M.D. ECF No. 9 at 16-25. The Court will examine each of those opinions in turn.

### A. Treating Physician Dr. Warren Beaver

Dr. Warren Beaver evaluated Plaintiff on November 27, 2018. Tr. 1009-11. He indicated that he had seen Plaintiff "every 3-4 months" since November 3, 2017. Tr. 1009. Plaintiff's listed diagnoses were "hypertension, polycystic kidney disease, bipolar disorder, narcolepsy, mixed connective tissue disease, cervical spondylosis, gastropareses." Tr. 1009. Dr. Beaver listed Plaintiff's prognosis as "guarded" and indicated that Plaintiff's impairments have lasted, or can be expected to last, at least twelve months. Tr. 1009.

During the examination, Dr. Beaver opined that Plaintiff could walk 15 minutes at one time and could stand 15 minutes at one time. Tr. 1009. Dr. Beaver opined on Plaintiff's ability to function during a working day. He found that Plaintiff could sit for less than 2 hours in an 8-hour working day; could stand/walk for less than 2 hours in an 8-hour work day; would sometimes need to take 10-15 minute unscheduled breaks every 1-2 hours during a working day, in addition to normal breaks, due to muscle weakness, chronic fatigue, and adverse effects of medication. Tr. 1009-10.

Dr. Beaver indicated that Plaintiff could never lift 50lbs, never lift 20lbs, rarely lift 10lbs, and occasionally lift less than 10lbs. Tr. 1010. He also opined that Plaintiff would likely be "off task" 25% or more of a typical workday on account of her symptoms being severe enough to interfere with the attention and concentration needed to perform even simple work tasks. Tr. 1010. In Dr. Beaver's opinion, Plaintiff's impairments would likely produce "good days" and "bad days" and would likely cause her to be absent from work "[m]ore than four days per month." Tr. 1010. Dr. Beaver found Plaintiff's impairments "reasonably consistent" with the symptoms and

functional limitations described in his evaluation and noted that Plaintiff's psychological impairments would also affect her "ability to work at a regular job on a sustained basis." Tr. 1011.

The ALJ found Dr. Beaver's opinion to be "minimally persuasive, as treatment notes show[ed ] generally intact physical and mental examinations that do not support these limitations." Tr. 25.

### B.  Treating Pulmonary Critical Care Specialist Dr. Jeffrey McGovern

Dr. Jeffrey McGovern evaluated Plaintiff on September 12, 2017. Tr. 650. He indicated that he had seen Plaintiff since 2012 and that Plaintiff had a sleep study performed in December 2008. Tr. 648. Dr. McGovern did not indicate how often he had seen Plaintiff from 2012 through 2017. Tr. 648. Plaintiff's listed diagnosis was narcolepsy and Dr. McGovern indicated that her prognosis was "fair." Tr. 648. He stated that Plaintiff's symptoms are sleep paralysis, hypnogogic phenomenon, and excessive daytime sleepiness. Tr. 648. Dr. McGovern also noted that Plaintiff has recurrent daytime sleep attacks that typically occur once per day and last for 20-30 minutes. Tr. 648. The attacks are precipitated by "quiet" and can "occur suddenly and in hazardous conditions" such as driving, while exposed to heights, or while moving machinery. Tr. 648.

During the examination, Dr. McGovern opined that Plaintiff had positive clinical finding/test result on a multiple sleep latency test in December 2008; that side effects from one of Plaintiff's prescription medications may have implications for her ability to perform work; and that Plaintiff's impairments due to narcolepsy can be expected to last at least 12 months. Tr. 649.

Dr. McGovern also opined on Plaintiff's ability to function in a competitive work environment. He found that Plaintiff would likely require 2-3 unscheduled breaks lasting 20 minutes during a workday, in addition to normal breaks every two hours, due to her daytime sleep attacks. Tr. 649. He also indicated that Plaintiff would likely be "off task" 25% or more of a typical

workday on account of her symptoms being severe enough to interfere with the attention and concentration needed to perform even simple work tasks. Tr. 649. McGovern opined that Plaintiff is capable of low stress work. Tr. 649. In Dr. Beaver's opinion, Plaintiff's impairments would likely produce "good days" and "bad days" and would likely cause her to be absent from work "[m]ore than four days per month." Tr. 650. Dr. McGovern found Plaintiff's impairments "reasonably consistent" with the symptoms and functional limitations described in his evaluation. Tr. 650.

Finally, Dr. McGovern opined that Plaintiff's sleep disorder, in combination with other impairments she may suffer from, are at least as medically severe as the Social Security Administration's Listing for epilepsy because Plaintiff's "profound sleepiness causes impairment of cognition and ability to perform." Tr. 650.

The ALJ concluded that Dr. McGovern's opinion that Plaintiff "would be limited to the reduced range of sedentary exertional level work" to be "not persuasive." Tr. 25. He specifically noted McGovern's findings that Plaintiff "would be 'off task' 25 percent of [sic] more of the workday" and that Plaintiff's "profound sleepiness caused an impairment," and suggested that these findings were inconsistent with (1) Plaintiff's ability to perform varied daily activities and take care of her child; and (2) treatment notes which show "intact mental and physical examinations." Tr. 25.

### C. The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff argues that the ALJ's rejection of the opinions of Dr. McGovern and Dr. Beaver "does not comport with the Regulations or the law of this Circuit and was issued in error." ECF No. 9 at 18. The Court agrees.

"At their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency of each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" *Raymond M.*, 2021 WL 706645, at *8 (citing *Jacqueline L. v. Commissioner*, No. 6:19-CV-6786, 2021 WL 243099, at *6 (W.D.N.Y. January 26, 2021)); *see also Cuevas v. Commissioner*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021) ("The new regulations controlling the ALJ's assessment of medical opinions now require an ALJ to explain how persuasive she found the medical opinions she considered, and specifically, how well a medical source supports their own opinion(s) and how consistent a medical source/opinion is with the medical evidence as a whole.").

The "supportability" factor of the new regulations "asks how well a medical source supported their opinion(s) 'with objective medical evidence' and 'supporting explanations.'" *Cuevas*, 2021 WL 363682, at *14 (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). "The 'consistency' factor calls for a comparison between the medical source's opinion and 'evidence from other medical sources and nonmedical sources' in the file." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)).

Here, the ALJ did not examine what Doctors McGovern and Beaver "used to support their opinions and reach their ultimate conclusions." *See* Tr. 15-28; *Cuevas*, 2021 WL 363682, at *14. As a result, he "failed to apply or even consider the supportability factor." *Id.* This amounts to legal error. *See id.* at *15 ("Because the ALJ failed to address the supportability factor . . . the ALJ committed legal error by failing to apply the proper legal standards in the form of the post-March 26, 2017 SSA regulations."); *cf. Jacqueline L.*, 2021 WL 243099, at *6 ("As required by the new regulations, the ALJ explained his findings regarding the supportability and consistency for each of the opinions, pointing to specific evidence in the record supporting those findings.").

9

Turning to the consistency factor, the ALJ's analysis is also wanting. The ALJ found Dr. Beaver's opinion to be "minimally persuasive, as treatment notes show[ed] generally intact physical and mental examinations that do not support these limitations." Tr. 25. He found Dr. McGovern's findings to be inconsistent with (1) Plaintiff's ability to perform varied daily activities and take care of her child; and (2) treatment notes that show "intact mental and physical examinations." Tr. 25. Where an ALJ "merely states" that an examining physician's opinion is "not consistent with[ ] the overall medical evidence," he has failed to adequately explain his conclusions regarding the consistency factor. *See Raymond M.*, 2021 WL 706645, at *10.

"Given the newness of the regulations . . . this Court will not engage in a substantial evidence review to determine if the legal errors were harmless." *Cuevas*, 2021 WL 363682, at *16. On remand, the ALJ should explicitly discuss the supportability and consistency of Doctor McGovern's and Doctor Beaver's respective opinions.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 8, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 11, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 8, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court